Dugan. Mr. Goodkin, good morning. Good morning, Your Honors. May it please the Court, I'm Stan Goodkin. I represent the appellants, Mr. and Mrs. Dugan. There are two issues on appeal. First, whether the court erred in failing to find an nationwide policy. That issue is answered in the affirmative. Secondly, did the court err in applying four set-offs as opposed to one set-off against the one nationwide policy? The answer to that is yes. Well, I'm wondering how we select insurance. I understand that the declaration page at issue in Grinnell only listed the liability limit once, but doesn't the reasoning of Grinnell suggest that there's no ambiguity once you consider the disambiguity language of the limit of liability provision? Well, if I'm understanding the court's question, I realize that... The court doesn't understand your question. No. If I'm understanding the court correctly, the court is placing emphasis on what this Seventh Circuit said about the disambiguator. Isn't that a odd word? I had a tough time really, Your Honors, trying to figure out a little bit about the meaning of that, but I think I've got it down. The meaning where you're saying that even though there's some kind of an ambiguity somewhere out there, we're going to look at this anti-stacking clause and we're going to say, that is ironclad. By golly, it disambiguates what else is out here. And I don't think in this particular case there's any reason to reconcile Grinnell with Allen. Allen is this court's decision, this Seventh Circuit's decision, all fours with this court, with the Dugan's case, Your Honor. There was one policy, there was the anti-stacking clause had referred to the limit shown in the declaration page, but when you go to the declaration page, there are multiple limits. And there was a finding by this court that there's an ambiguity and it requires stacking and it permits only one set off. So I hope I answered the court's question on that. We're really going to have to wrestle with that. I mean, the three of us are going to have to wrestle with that. Well, Your Honor, I think that the which I think both of those cases are based upon distinguishing facts that are just totally irrelevant to our case. In that, Kapinas and Jones dealt with two policies, two separate policies of underinsured motorist coverage. I think the case you ought to be zeroing in on would be our court's later opinion in Grinnell. Well, Your Honor, I see Grinnell as a case that is factually dissimilar because there was no ambiguity whatsoever between the interaction between the anti-stacking clause and the declaration page. The reason there was no ambiguity is because, as the court earlier pointed out, there was one limit referred to in the anti-stacking clause and only one limit listed in the declaration page. One against one is the same. There's no limits of $100,000 shown in the declaration page. This case is very similar to the Illinois Supreme Court case where Bruder was actually, that is the key case here, in that the Bruder dicta has been approved by the Allen case and it has also been reaffirmed by the recent holding in Hobbs v. Hartford, the January 2005 Supreme Court of Illinois case, whereby Hobbs said that if the anti-stacking clause refers to the limit of liability shown in the declaration page, but the declaration page shows multiple limits, that constitutes an ambiguity permitting stacking under Illinois law unless, sorry, I'm sorry, it's you, I'm sorry, unless, and this is what Hobbs held, under those facts there's an ambiguity permitting stacking unless there is quote, other qualifying language in the anti-stacking clause. I submit that there was no such other qualifying language in the anti-stacking clause that would have prevented the ambiguity. Now, Nationwide could have inserted other The limit of liability shown in the declaration page is the most we will pay for damages regardless of whether, regardless of how many times that particular limit is listed in the declaration page. That would have sort of like served as a disambiguator. Nationwide also, your honors, could have prevented this ambiguity by issuing four separate policies giving $100,000 of underinsured motorist liability coverage for each car. They didn't do that. They also could have prevented the ambiguity by listing the $100,000 limit only one time. This is what happened getting back to Grinnell, your honor. That's why this court was so clear, and I agree with the holding in Grinnell. Grinnell is not against the Dugan facts. Grinnell held what it held because that anti-stacking clause said the limit is the most we will pay, and then you go over to the declaration page, and yes, there is one limit shown. There's no ambiguity. It's crystal clear. That anti-stacking clause under Grinnell was unequivocally crystal clear. The anti-stacking clause, when it interacts with the declaration page in the Dugan case, is not crystal clear. You know, the Illinois Supreme Court has said more recently in, you know, the case that you mentioned, Hobbs, that followed Bruder, that it didn't mean to create any per se rule that just because the declarations page may list a liability limit more than once, it's necessarily ambiguous, and that has to factor into our analysis, doesn't it? Well, we're not saying, your honor, that there is a per se rule. In fact, I don't believe that Hobbs ended up holding that there was a per se rule. But I think here, you know, this court has followed the Bruder Dicta, which is, and has stated in its decision that they believe that it, in the Allen case, that it predicts what the Illinois Supreme Court would do. Our case, your honor, is on all fours. You're in your rebuttal time, but do whatever you want. Thank you very much. I'll hold back. Appreciate it. Mr. Reces? Reces. Thank you. Good morning. I may have pleased the court. My name is Mike Reces, and I'm here today on behalf of Plano Papelli Nationwide Insurance Company. The district court can be affirmed on either of two grounds. First, because the policy prevents stacking of the underinsured motorist limits, and staff language. Illinois applies a set-off-first-then-stack rule, which here results in a zero net recovery. Now you agree, don't you, that we'd have to overrule Allen if we were to hold that there's no ambiguity with respect to stacking in this policy? I think that you would not follow Allen because Allen has been superseded by the Illinois Supreme Court decision in Hobbs. This is diversity jurisdiction, and your disposition has to be based on how you think the Illinois courts would decide the case. Now in Allen, Judge Bauer had only Bruder to work with back in 1998, and he was very careful to base his decision on the fact that at that time, the Supreme Court would rule. He didn't have the benefit of about the last ten years of case law culminating in Hobbs, where the court, as you indicated, renounced or eschewed any suggestion that there was a per se rule of ambiguity. Instead, the court said that the declarations page is simply one part of the insuring agreement. It can't be expected to answer every coverage question that could arise, and that you have to have a rule of ambiguity. You have to refer to the language of the policy, to all parts of the policy, to decide whether there is an ambiguity, and that's done on a case-by-case basis. Now, given the dictum of Bruder, why does Nationwide not do more to eliminate the possibility of ambiguity in the declarations page? Well, Your Honor, first of all, they've written in two different places in the policy that you get one limit. First, we say in the limit of liability section that the most that we will pay is the limit regardless of the number of vehicles shown on the declaration, the vehicles or premiums shown on the declaration page. So, if you insure one vehicle for $100,000, adding a second vehicle, adding a third vehicle, adding a fourth vehicle will increase the number of vehicles covered, but does not increase the limit for any one vehicle that's insured when it's involved in an accident with an uninsured motorist. What's the logic behind treating coverage for multiple vehicles in one policy the same as multiple distinct policies? Well, now I think you're going to the second ground, which is how the district court had disposed of the case. And if I could get to that, look, Baker, I think, addresses that very neatly, where the court had noted that when a policy covers two vehicles with a premium and limit attached separately, it says that even if each vehicle has an accident, the limits for each remains available, which is another way of saying that each car is individually covered under our policy as if it were insured under a separate policy. If vehicle one is involved in an accident, that does not affect the coverage or the limits available under the other three vehicles. And the reason that an insurance company would issue such a policy is, look, it's a matter of administrative convenience for the policyholder. The policyholder gets to write one check, covers four vehicles for the year, instead of having to keep track of what could be four checks for four separate vehicles that may have to be paid at different times each year. So it's a matter of administrative convenience why they would do that. Now, the problem with the defendant's argument is that it focuses on the declarations page to the exclusion of the rest of the policy. The declaration page shows the coverage for each vehicle, the amount of premium for each vehicle, but it doesn't tell you how the coverages apply. To the extent that the declarations page might leave the question open to interpretation, the limit of liability section answers that question clearly and unambiguously. The limit is $100,000 per person, regardless of the number of vehicles or premiums shown on the declarations page. Adding cars to the policy does not increase the policy limit for any one vehicle under the policy. That's Hobbs where the court said very clearly that you have to look at the entire policy and not just one part in isolation, and that the declarations page cannot be the source of the ambiguity by itself. Defendant's interpretation is unreasonable, as the court noted in Baker. If, as Baker recognizes, stacking two limits, one for each car, quadruples the insurer's exposure for only double the premium, then stacking four limits for four cars, as defendants would have in this case, would multiply that exposure by a factor of 16 and that would be even more unreasonable. We submit the policy said what it meant, and meant what it said, that the $100,000 per person limit is not increased by adding more cars for the additional premium shown in the declarations. And this reading of the policy is reinforced by the other insurance clause in the coverage. The anti-stacking clause states that recovery is limited to the highest limit for any one vehicle whenever there is other applicable coverage under one or more policies or provisions of coverage. So, even if the limits for the three vehicles in addition to the one that Tony Dugan was driving at the time of the accident could be stacked, as defendants claim, they still would be entitled to only the highest applicable limit for any one vehicle or $100,000 consistent with section 143A-2 subparagraph 5 of the insurance code and Illinois public policy. And we have cited supplemental case authority. I'm a little curious about that. Yes. Procedurally. Yes. Why weren't those cases cited in your response brief? Because you raised the other insurance argument there. These cases aren't new cases. We raised those cases on pages 20 and 21 of our brief. That was a ground that had been argued below but never addressed by the district court. It got about two pages in his argument. I gave it about two pages in my brief. It seems to me like you were trying to get a surreply brief out of this. Well, what happened is in the reply brief, he puts nine pages into this argument, cites all these cases that were never cited in his opening brief where it only comes up like in about a page of argument. When I started to look at the cases in preparation for the argument, I came across these cases, all right, and pursuant to the rule, I wanted to make them available to the court. And I understand that I had a 350-word limitation, which I followed, and I know that counsel has every right to respond to that, so he gets the last word on that. And we'll leave it at that, but those cases also support the result reached by the district court under a de novo standard of review. Now, even if the policy did not prohibit stacking, the district court properly set off the limit paid by the at-fault motorist carrier. The district court followed two cases, Jones and Kapanis, not too sure where the emphasis is on Kapanis or Kapinas, but I'll call it Kapanis, which applies a set-off-first-then-stack rule. As the court noted in Baker, each car is individually covered under our policy, just as if the cars were insured under separate policies. Defendants don't question that this first set-off-then-stack rule applies on a per-policy basis, that is inter-policy stacking. If we issued four policies, we would get four credits against each policy limit. That's Jones and Kapanis. They don't question it. However, they argue that the rule should not apply when they want to stack limits of four vehicles under one policy, that is intra-policy stacking. But there is no meaningful distinction, and certainly none that's been suggested to this court by the defendants, between stacking four limits of four policies and stacking four limits of four vehicles under one policy. If the set-off applies against each limit of four policies, then it equally should apply against four limits of a multi-vehicle policy. The defendants' argument draws a distinction between inter-policy stacking and intra-policy stacking that exalts form over substance and that finds no support in the case law. Defendants have absolutely nothing to complain about what the district court did here. The court gave the defendants the benefit of every doubt concerning stacking and then followed that argument to its logical conclusion. If they're looking to stack four policy limits on four vehicles, we should have been entitled to set off the amount paid by the under-insured motorist carrier from each limit as if each vehicle were insured under its own policy. The court didn't have to predict how the Supreme Court would rule on this issue in light of Jones and Kapanis and to avoid the whole issue about the Bruder Dicta and what the court had done in Allen v. Transamerica in 1998. The district court resolved this case on the narrowest grounds possible without having to decide stacking. Because Jones and Kapanis are good law, the district court's decision to follow them should be affirmed. For all the reasons set forth in our brief, including the other insurance clause, we ask you to affirm. If there are no other questions, thank you. Thank you very much. Mr. Goodkin, you have two minutes. Thank you, Your Honor. Yeah. First of all, the other insurance clause does not apply intra-policy-wise. It applies intra-policy-wise based upon the Illinois Supreme Court decision of Kauffman v. Economy Fire and the Glidden v. Farmers case, both Supreme Court cases, which talk about other insurance. Other insurance applies in order to prevent one insurance company from having to pay a disproportionate amount of a loss when it shares the same risk with another insurance company. It does not apply. As far as Kapanis is concerned, Kapanis and Jones both held the same thing. Namely, under the Illinois Insurance Code, it's very clear. An insurance carrier that provides underinsured motorist coverage is entitled to apply one set-off per policy. The court below applied four set-offs against one policy. As far as the increased risk is taken on because of stacking issues, that is irrelevant. It was not even addressed by the Hobbs court that entered its decision nine months after Grinnell v. Baker. Hobbs v. Hartford actually referred to Grinnell in its decision and said nothing about this increased burden. Hobbs reaffirmed the Bruder Dicta holding from 1993. The Bruder Dicta holding predicts what this court, sitting in diversity, should do with the facts in this case. And we respectfully request that this court reverse the order of the district court and find that the Dugans are entitled to ask for up to $300,000 of underinsured motorist coverage under the policy calculated by stacking the four limits of $100,000 each to $400,000, backing out the one set-off that they got of $100,000. Take a look at the light. I'm sorry, Your Honor. Do you want to finish your sentence? Well, I was just saying that, well, I'm through. I don't want to take additional time if I'm through. Are you sure? I am. Thank you. Thank you. The case will be taken under advisement.